May it please the clerk, my name is Steve Rahn. It is my privilege to represent the City of Springfield. On this case, there is, I think, one primary issue. The plaintiffs argue, and the district court agreed, that if five unrelated non-disabled persons can live together in a single-family home under the ordinance, but a similar group of disabled persons living in a family group home must be at least 600 feet apart, then the ordinance is discriminatory on its face. Frankly, the city agrees with that. Agrees with what? That that's what the law says? No, agrees that if that were what the law says, it would be discriminatory. What is the space rule? The space rule is 600 feet, but where we take issue is in the definition of family. If the plaintiff's interpretation of family is correct, the widow and a foster child to live in a single-family home. I think that would be considered a family as a... Why? They're not related. They're related by law. They are not related. Widow and a foster child, not adopted. Mm-hmm. Are they allowed to live together? I think the burden of your position is that they are not, and then my follow-up question is, has Springfield ever prosecuted? Springfield ever tried to get them to leave? I do not know that. That has not... How about a single unmarried couple? Pardon me? A single unmarried couple. Very frequent occurrence. Unmarried people living together. Is that illegal in Springfield? There's... Within 600 feet of any other home? To my knowledge, there's never been a My position seems to be that there are a lot of things that happen every day and are accepted that are nonetheless illegal, but there have never been any prosecutions of anybody unless they were disabled. There's been no showing of that? No. Look, has the city ever told any group of unrelated adults that they can't live together... I do not know. ...unless those the city has told unrelated disabled adults that they can't live together? I do not know that. And that's disparate treatment in enforcement, even if the ordinance means what you say it means. There is nothing in the record that supports your conclusion. You would need to put in the record something to show that your current view of the ordinance is enforced with respect to non-disabled people. Because otherwise, what the record shows is that disabled people are told they can't live there, and non-disabled people aren't. Respectfully, I disagree, Your Honor. This is not an as-applied case. This is an on-the-face case. I don't even know what this distinction is. The question is whether there is discrimination between disabled and undisabled people. We know from the unrelated, they can't live within 600 feet of any other single-family resident. Well, without any evidence, any reason to believe that Springfield has ever told unrelated people that, it looks like disparate treatment of the disabled. What's to refute that? With respect, you're putting the cart before the horse here. There has not been any discovery yet. You can take the position that evidence is missing, but so far as I know, you haven't offered to produce that kind of evidence. The definition of family is not dependent upon the evidence. It's dependent upon the legal definition for this court to determine de novo, and the evidence of how it is enforced may determine whether or not it is properly... ...the way you do. Has any court in Illinois ever interpreted a similar ordinance of any other jurisdiction the way you do? Has any court anywhere in the United States ever interpreted any similar ordinance? I'm not aware of that. These ordinances are very common. The fact that no court in a nation of 300-plus million people has ever interpreted an ordinance the way you do might suggest something about that interpretation. I've not seen an ordinance like this, Your Honor, where someone interprets the language of five persons not all so related to mean five unrelated people. That's a rather convoluted way of saying five unrelated people, and that's the basis of our position is that if it meant five unrelated people, why doesn't it say five unrelated people? As it does throughout the country. There are many cases. The case of the city of Chicago Heights that was cited by the plaintiff does say five unrelated people. Our ordinance does not say five unrelated people, and the fact that we don't know, we haven't gotten to discovery to determine whether or not it's equitably applied, but that's not the case here. In this case, the plaintiffs are asking this court to make a legal determination of what family is, and it is a case of first impression. Well, it's not a first impression with just a group home in general. We know common knowledge is that when a group or a group home is, and sometimes these happen to be very quiet people and law-abiding, etc., but there's, I guess, some residents complained about the group home here, and they worry about the value of their property. That's why they say the houses look just alike and have these others. They didn't know about across the street there was another outfit that had a group home, and this is why these ordinances even appear, is because there's concern in the neighborhood about their property value, and if it gets re-won, there may be more coming, because obviously it's doing a very wonderful service for those there under care. Your Honor, I would... And that's the problem. That's why they put up a big space, they thought, because they didn't want to group homes. Your Honor, I would suggest that that's only part of the reason why the 600 foot is there. It's not to protect the property values of the other people, it's to protect the first home that was there. In this case, the Spark home moved in, it established itself, and they have the right, as the evidence shows, that you don't want to put a bunch of homes together because that's de facto institutionalization. It's clustering. So the 600 feet protects the Spark home that's already there. There's no attention has been paid to the rights of the disabled persons in the Spark home who had the right to say, yes, we want a neighborhood setting here, and it's been violated, not by 500 feet, but by 150 feet with another home moving in. We think that the neighbors that are there, the disabled persons in the group home that are there, also have the right. And if you look at the evidence when this was established, the plaintiff's expert, Mr. Lauber, said yes, a 600 foot spacing is necessary to prevent clustering. Did the other, what was the other name of the other company? Spark. Spark. Did they complain? They've not been involved in the case. Okay, but that, what you just described, they might be the ones that came forward and say, hey, we, they're violating the... They have the, they do have a right, I would maintain to have their boundaries protected. So I go back to my other point that this is raised by three neighbors? I don't remember the number. There were a number of neighbors that did express a concern about too many group homes in the neighborhood. And it was not, and it maybe should have, but it wasn't a concern about the disabled, it was more concerned about what's going to happen to their concern. Yeah. Yes. The ordinance itself does provide that the 600 foot can be waived if they show that it won't have an adverse effect on the other house or on the neighbors. The other house is the first consideration in the ordinance as far as... Well that's what creates violation. Pardon me? That's what creates, they've already got their space. That's the reasonable accommodation procedure. These other groups jumped into their space, that's all. Yes, and that's the reasonable accommodation procedure. So to reach that, there was no evidence in the case presented as to any effect that it would have on the other house. The reasonable accommodation isn't, well if you don't meet the 600 foot rule, you a way of saying the 600 foot rule is per se illegal. No court, the courts have held that spacing requirements can be legal. So they're not arguing that, well it's per se illegal, they just say that when it's violated you have to waive it, which... You have to make an exception. You have to make an exception and not follow it. If there are no further questions, I would reserve the balance of my time for rebuttal. All right, thank you. Ms. Kwong. May it please the court, my name is Teresa Kwong and I represent the United States. I will address the city's arguments regarding plaintiff's intentional discrimination claim, while Mr. Kennedy will address the failure to accommodate claim, which provides a separate and independent basis for upholding the preliminary injunction. Plaintiffs have more than met the requirement of showing a better than negligible... Ms. Kwong, if you would raise your voice that would help, at least me. Oh thank you, no problem. Plaintiffs have more than met the requirement of showing a better than negligible likelihood of success on the merits. The district court's reading of family is the most natural reading of the ordinance, where you have up to five unrelated individuals could make up a family, two of which could be related, but that's not necessary. That's an analogy to that would be if I offered a scholarship for up to five students not from all the same schools. So I could give a scholarship to three students from two schools or three students from three schools. By contrast, the city's current interpretation of family would produce implausible and potentially illegal results. As Judge Easterbrook pointed out, under the city's theory an unmarried couple without children, a single adult with foster children, would not be allowed to live together in a would not constitute a family at all and would not be allowed to live in any single family home at all because the spacing requirement doesn't apply to them, but they would not be allowed, they would not be considered a family. So this, as the court pointed out, this just can't be how the ordinance should be read. In light of the low standard of showing the likelihood of success for purposes of the preliminary injunction and the undisputed fact that the residents of the noble home, if they were evicted pending this case, they would suffer irreparable injury, the court can find that the district court did not abuse its discretion in issuing the preliminary injunction. Another point the city brought up was Mr. Lauber's 1990 letter to the city. What the city did not point out was that in that same letter, Mr. Lauber said that specifically relied on the fact that the city has the CPU procedure. Little did Mr. Lauber know that since, you know, 28 years later the city has not issued a single exception from the spacing requirement. Moreover, in Mr. Lauber's 1991 recommendation to the Illinois General Assembly, which the city cited in their brief, he specifically stated that requiring a special-use permit for small homes for persons with disabilities with four to eight residents would certainly violate the Fair Housing Act. More relevant is Mr. Lauber's testimony from the Planning and Zoning Commission hearing in this matter, where he stated that the noble home residents, in his expert opinion, qualify as a family and should not need to seek zoning approval to continue to operate. So does the Fair Housing Act disagree and say that this is not a valid law? Is it contrary to the Fair Housing Act? Yes, the government's position... No matter where it is? I'm sorry, no matter what. Well, yeah, it's in a neighborhood and this is the only house they could find, you know, so that's where they are. They invaded someone else's space and you're saying that the FHA, whatever regulations it has, says you can do that. What the Fair Housing Act states is that you cannot just impose a 600 feet spacing requirement that treats individuals with disabilities differently from individuals without disabilities. Well, Judge Easterbrook cited some examples of people who are not related, for example, and I know when it's near a college they don't want seven guys partying and renting a place, and so I guess that, you can keep them out, I guess, I don't know. Well, even under the district court's reading of the definition of family, seven unrelated persons would not be a family. Well, you know, they like to call themselves family, you know. Sure. It's a definition that gets pretty spread out these days. And we agree with the district court that up to five unrelated people could be a family, we're not arguing that up to seven could be a family. It's whatever the city wrote in the ordinance as a definition of family. If they allow five unrelated individuals without disabilities to live together in a single-family home, they should not treat a home for up to five individuals with disabilities any differently because of their disability. Of course, in that case, you know, people with disabilities take a lot of extra attention and therefore there's numbers have to be limited just by the fact of what they're doing. So, sometimes you have to have a, what a, I don't want to call them supervisor or what, somebody's support care workers. And Judge Manning, you had brought up the fact that there have been complaints in the neighborhood, but those complaints during the administrative hearings here really dealt with the Spark House, not as much about the Noble Home. And what the record shows is that actually there has been no complaints about the Noble Home. I see my time is up. Unless the court has any further questions. Thank you. All right, thank you. Please the court, I'm Tom Kennedy. Sarah Jane Hunt and I represent the plaintiffs in this case and we want to argue that Judge Mills's decision was not clearly erroneous because there was at least some evidence that the plaintiffs were in this case. I think it's important to address what the city doesn't say. The city doesn't say that the accommodation that the plaintiffs were requesting, the right to live in the community, actually to continue to live in the community, would cost the city any money. It didn't say that it would fundamentally alter its zoning scheme in any way. It didn't say that the residents of the Noble Home created any safety problems in the community. It didn't say that the really need to live in the Noble Home when the plaintiff said the home was fully accessible, I can go in my wheelchair, anywhere in the house, outside the house, in the backyard, and so forth. It didn't say that wasn't true. It didn't say that the requested accommodation wasn't absolutely necessary for these people with disabilities to live in the home of their choice. And the thing that makes this case somewhat different than other cases, Your Honor, is that in this provider, not individual advocacy group, the families themselves selected this home and made arrangements for their residents, their sons and daughters, or their brothers and sisters to live there. Are they renting? Yes, they are renting. So the only issue, as far as I can tell, is that the city claims that the plaintiffs failed to demonstrate at the hearing and in the hearing that the residents of the Noble Home did not have an adverse impact on the Spark Home. The Spark Home is the Springfield Association for Retarded Citizens, longtime existing organization in Springfield. Their home is across the street and a couple of houses down. The testimony was that there has never been any interaction in the previous two and a half years between any of those residents, any of the staff, or any of the administrators of the Spark Home with the Noble Home, except for one or two occasions early in 2014 when a Spark resident got lost and came to the Noble Home, knocked on the door, went in the door, they sent him back home. There were two interactions, maybe, in 2014. Otherwise, at all times during the day when people are at work, or at night when they're home, or on weekends when they're out recreating, there is absolutely no interaction between the Noble Home and the Spark Home. So to say that the plaintiffs failed to demonstrate that the Spark residents weren't hurt is nuts. The testimony at the hearing by Dan Lauber was that the existence of a group home does not have an adverse impact on property values, home sales, safety, noise, light, any of those things. What was the realtor's problem? The realtor next door, I don't know what her problem was, your honor. It was very weird. The realtor testified that she was selling the home next door. She was able to sell the home next door. She got the price she was asking, but she said that she had to hold her open house during the week, not on weekends, because she wanted to be there when the residents weren't there. Then she said that one of the residents in the home made a big noise and scared the children. The only person who was at the home during the day is the late plaintiff A.D., who is a nonverbal person who can say a total of three words, one of which is bang bang, which he does at a television that he watches during the day. He can't say anything else. Those are the only three things, and he's old and infirm and now deceased, but he can't say anything loudly. So that was just completely preposterous. I mean, just nuts. At any rate, she testified that, you know, she thought it was a bad deal that they were coming into the community. I don't know why, and I don't know what the beef was, because she sold the home at the price she was asking. So it didn't adversely affect property values in the neighborhood, and Mr. Lauberg submitted a paper and testimony that it doesn't adversely affect property values. So the noble home doesn't adversely affect the property values of the folks at Spark. It doesn't affect their safety. It doesn't cause noise. It doesn't adversely impact their tenancy in any way, if they're tenants. It doesn't interfere with the covenant of quiet enjoyment for the folks in the Spark home. There's no impact between the noble home and Spark, yet the city says we failed to prove this stuff, and it's all in the record. There's an hour of Dan Lauberg's testimony, and there's, you know, tons of evidence that applies equally to the Spark residents as it does to the neighbors. So we'd argue that there was plenty of evidence that an accommodation was reasonable and was necessary to allow folks to live in the community as they had chosen. So they can get an exception then? Yeah, they have to, you know, we asked for an exception. The city's process for asking for an exception was the conditional permitted use. Cities all have different names for it, but it's, you know, a variance or a special use permit, or in this case it's a conditional permitted use. So we followed their procedure. We, you know, we submitted a petition. The petition says give us a CPU or an accommodation. We publish in the newspaper, give us a CPU or an accommodation. They posted a sign in the front of the house, you know, give us a, we're going to have a zoning hearing, this is what it's about. At the hearing we presented evidence about the testified. I was sworn in, I testified for what that was worth, and the city does not mention the word accommodation in any of its, in any of the proceedings which went on for hours, and then it's, you know, it doesn't say a thing about the plaintiff's request for an accommodation at all during the zoning proceeding or during the City Council meeting. What's remaining then, it's a preliminary injunction, what is it, is there something further going to happen? All we ask in the injunction is don't evict us during the pendency of this case, that's what's so weird. All we want to do is to be left alone till this case is over with, and the city insists that it has the right to give us a notice then kick us out in 60 days if it wishes. Thank you, Ron. Thank you, Mr. Kennedy. Mr. Rahn. Hey, please, the Court. I don't have a lot to add to my prior argument. I would respond to the argument that as part of the reasonable accommodation process, the the plaintiffs prove that it's necessary that they live there. Their evidence of necessary is that they found this place and and that's where they want to live. There is no evidence that it's impossible to find a house in Springfield that complies with the 600 foot rule. That's a simple matter of math. In a one square mile area of land, there would be a minimum of 64 plots for homes that would be 600 feet from the other plot, and Springfield has 60 square miles of land, so there's no, the argument that there could not be any other group home location in Springfield, that it would be necessary for them to live there, is simply not true. But again, we go back to the legal definition of family and our position that if the language was meant to say five unrelated persons, that's the easiest thing in the world to say, and you wouldn't go through a convoluted manner to establish that, yeah, that that's what it really, really There was no evidence regarding the definition of family. There was a lot of evidence that the only legislative intent was to bring the ordinance within compliance of the Fair Housing Act. That's the only purpose that it was amended, and Mr. Lauber at the time said excellent. If the plaintiffs prevail here, what's next for the city? If the plaintiffs prevail here, as I said before, the ordinance is indefensible and we'll have to essentially confess judgment. We've actually stated that as grounds to stay, to minimize further expense, and that would be our intent. Thank you. Thanks to all council. Case is taken under advisement.